IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



AUG 24 2018

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

ROBERT CHAMPION,

    Plaintiff,

v.                       Civil Action No. 3:16CV647

DR. M. DICOCCO, et al.,

    Defendants.

## MEMORANDUM OPINION

Robert Champion, a federal inmate proceeding pro se and in forma pauperis, filed this action seeking relief under Bivens[1] and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671, et seq. The matter is before the Court on the MOTION TO DISMISS filed by Defendants DiCocco, Laybourn, Ramsey, and the United States (ECF No. 37) and DEFENDANT YIRGA'S MOTION TO DISMISS OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT (ECF No. 45). By Memorandum Order entered on April 27, 2018, the Court converted the MOTION TO DISMISS filed by Defendants DiCocco, Laybourn, Ramsey, and the United States into a Motion for Summary Judgment. (ECF No. 40.) For the reasons set forth below, the MOTION TO DISMISS filed by Defendants DiCocco, Laybourn, Ramsey, and the United States (ECF No. 37) will be granted in part and denied in part and DEFENDANT YIRGA'S MOTION TO DISMISS OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT (ECF No. 45) will be granted in part and denied in part. Claims

---

[1] Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

1(c), 1(d), and 4 will be dismissed. Defendants' requests to dismiss Champions' others claims will be denied. Because this case presents what appears to be a particularly egregious instance of deliberate indifference to a serious medical need, the Court will appoint counsel for Mr. Champion.

## I. CHAMPION'S CLAIMS

Champion contends that he is entitled to relief upon the following grounds:[2]

Claim 1                     Defendants DiCocco, Laybourn, Ramsey, and Yirga ("Defendants") violated Champion's rights under the Eighth Amendment by failing to provide timely and adequate medical care for issues related to his colon. Specifically:
a.   Defendant DiCocco failed to ensure that Champion timely received surgery to eliminate Champion's need to use a colostomy bag;
b.   Defendant Laybourn failed to ensure that Champion timely received surgery to eliminate Champion's need to use a colostomy bag;
c.   Defendant Yirga failed to ensure that Champion timely received surgery to eliminate Champion's need to use a colostomy bag; and,
d.   Defendant Ramsey provided inadequate medical care for Champion's complaint of stomach pain on July 29, 2015.

Claim 2                     Defendants DiCocco, Laybourn, Ramsey, and Yirga were negligent in failing to provide Champion with adequate and timely medical care.

---

[2]   A number of Champion's claims against other defendants have been dismissed. Thus, the Memorandum Opinion only addresses those claims that remain.

2

Claim 3                    The United States is subject to liability
                           under the FCTA because its employees engaged
                           in medical malpractice.

Claim 4                    Defendants DiCocco, Laybourn, Ramsey, and
                           Yirga violated Champion's right to Equal
                           Protection under the Fourteenth Amendment
                           when they referred to Champion's need for
                           surgery as "'cosmetic' and 'plastic surgery'
                           despite providing hormone treatment for
                           transgendered inmates similarly situated."
                           (ECF No. 1, at 14.)

The Court notes that Defendants have not addressed Claim 2 or

filed a separate motion to substitute the United States as the

defendant for that claim.[3]   Thus, Claim 2 will go forward as

pleaded.

## II.   STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that

there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."   Fed. R.

Civ. P. 56(a).   The party seeking summary judgment bears the

responsibility to inform the Court of the basis for the motion,

and to identify the parts of the record which demonstrate the

absence of a genuine issue of material fact.   See Celotex Corp.

v. Catrett, 477 U.S. 317, 323 (1986).   "[W]here the nonmoving

---

[3] When a federal employee is charged with committing a
negligent or wrongful act, the Federal Employees Liability
Reform and Tort Compensation Act of 1988 ("Westfall Act")
authorizes the Attorney General to certify that an employee was
acting within the scope of employment at the time of the
incident.   "Upon certification, the employee is dismissed from
the action and the United States is substituted as defendant."
Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 420 (1995).

3

party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. Anderson, 477 U.S. at 251 (citing Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." Id. (quoting Munson, 81 U.S. at 448).

In support of their motions, Defendants submitted: an affidavit from Genna D. Petre, an attorney at the Federal Correctional Complex, in Butner, North Carolina (ECF No. 38-1);

4

a variety of documents from the Bureau of Prisons (ECF Nos. 38-2, 38-4); the declaration of Defendant DiCocco[4] (ECF No. 38-3); and, a declaration from Defendant Yirga (ECF No. 46-1). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. Celotex Corp., 477 U.S. at 324. Furthermore, "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." E.D. Va. Loc. Civ. R. 56(B). Champion has not responded to the Motions for Summary Judgment, but his Complaint is sworn to under penalty of perjury. In light of the foregoing submissions, the following facts with respect to Claims 1(a) through 1(d) are presumed true. The Court sets forth the facts with respect to Claims 3 and 4 in conjunction with the analysis of those claims.

III. **UNDISPUTED FACTS PERTAINING TO CHAMPION'S MEDICAL CARE**

A. **History Of Champion's Medical Care From 2013 Until April 23, 2015**

Champion is a federal prisoner, currently incarcerated at the Federal Correctional Complex, in Petersburg, Virginia ("FCC Petersburg"). (Compl. 1, ECF No. 1.)[5] "In late 2013,

---

[4] In his Declaration, Dr. DiCocco often cites to supporting documents. Because Champion does not dispute the accuracy of Dr. DiCocco's Declaration, the Court omits Dr. DiCocco's citation to the supporting documents.

[5] The Court removes the paragraph structure and omits the paragraph numbers in the quotations from Champion's Complaint.

[Champion's] colon became infected while on house arrest under the custody of the Federal Government. On December 24, 2013, [Champion] had surgery to remove the infection while on federal house arrest at Roanoke Valley Hospital . . . ." (Id. at 8.) The surgeon informed Champion that the surgery would have to be completed at a later date because of complications. (Id.) Due to the fact that the surgery was not completed, Champion was left with a colostomy bag. (Id.) The surgeon informed Champion that he would be able to complete the surgery so that Champion could have "anatomically correct bowel movements once [Champion] healed and lost weight." (Id. at 8-9.)

On April 29, 2014, Champion was committed to the custody of the Bureau of Prisons ("BOP"). (ECF No. 38-1 ¶ 4.) Champion was sent to FCC Petersburg later that month. (ECF No. 38-3 ¶ 4.) At FCC Petersburg, Champion's primary care provider is a Mid-Level Practitioner ("MLP"). (Id.)

On October 14, 2014, MLP Yirga "conducted a clinical encounter with Champion." (Id. ¶ 6.) During the encounter, Champion "expressed his belief that he was to undergo surgery to remove the colostomy bag if he lost weight and stated that he had lost over 60 pounds since his surgery." (Id. (punctuation corrected.) That same day, MLP Yirga submitted a request that the surgeon be consulted to see if it was possible to reverse

The Court corrects the spelling, punctuation, and capitalization in the quotations from Champion's Complaint. The Court employs the pagination assigned by the CM/ECF docketing system to Champion's submissions.

6

Champion's surgery so that he would no longer need the colostomy bag. (ECF No 38-4, at 5.) MLP Yirga labeled the priority of this Consultation Request as "Medically Necessary – Non-Emergent." (Id.)

On November 18, 2014, Champion was seen by a general surgeon who recommended that the medical staff at FCC Petersburg obtain the original surgery report from the hospital that performed the initial surgery on Champion and conduct a CT scan of Champion's abdomen and pelvis as well as a colonoscopy and proctoscopy. (ECF No. 38-3 ¶ 7.) On December 1, 2014, MLP Yirga submitted a request for approval of the recommended procedures. (ECF No. 38-4, at 8.) Additionally, MLP Yirga submitted a request to obtain a copy of Champion's original surgery report. (ECF No. 46-1 ¶ 6.)

The records show that (with gall that is beyond the pale) "[o]n December 4, 2014, the Utilization Review Committee ('URC'), disapproved Mr. Champion's request for the CT scan, citing that the colostomy take-down procedure is elective in nature and noting that Mr. Champion entered the BOP with the colostomy bag in place." (ECF No. 38-3 ¶ 8.)

On December 18, 2014, Champion wisely submitted a request to the Medical Department wherein he asked that the Medical Department reconsider its denial of the stoma reversal procedure. (Id. ¶ 9.) "On December 23, 2014, a member of the Health Services Department responded to . . . Champion's request

7

for reconsideration, explaining that the request was resubmitted to the URC as a request for a colonoscopy, to be performed prior to the surgery, and was approved." (<u>Id.</u> ¶ 10.) According to Dr. DiCocco:

> This approval was due to further discussion of Mr. Champion's condition by the URC, which showed improvement in his health and a significant amount of weight loss in order to be eligible for a take-down procedure. While the procedure was still elective in nature and not emergent, it was determined that it was possible for the BOP to approve the surgery, pending the results of the recommended tests and the approval of the Mid-Atlantic Regional Office.

(<u>Id.</u> ¶ 11.) On December 18, 2014, Dr. Laybourn approved and signed a consultation request for Champion to undergo a colonoscopy with proctoscopy. (<u>Id.</u> ¶ 12.) So, at least, reason prevailed to some extent.

On March 18, 2015, Champion underwent a colonoscopy. (<u>Id.</u> ¶ 13.) The results came back normal. (<u>Id.</u>)

On April 14, 2015, MLP Yirga submitted a consultation request for Champion to undergo a stoma reversal operation. (<u>Id.</u> ¶ 14.) On April 23, 2015, Dr. Laybourn recommended that the request be referred to the Mid-Atlantic Regional Office for review and approval. (<u>Id.</u> ¶ 15.) On April 23, 2015, Champion was approved for his surgery. (ECF No. 38-2, at 8.) There is nothing in the record to explain why this six-month delay was necessary or reasonable.

## B. Defendant Ramsey's Interactions With Champion On July 29, 2015

On July 29, 2015, at 5:45 p.m., Champion arrived at the Health Services Department and complained that he had been experiencing stomach pain for the past two hours. (ECF No. 38-3 ¶ 17.) Emergency Medical Technician ("EMT") Ramsey examined Champion. (Id.) Champion "did not report any bleeding, fever, or vomiting, and reported normal bowel movements." (Id.) Champion asserted that his pain was 10 on a scale of 1 to 10. (ECF No. 1, at 10-11.) EMT Ramsey provided Champion with 325 mg of Tylenol, "to be taken three times a day and advised him to follow up at sick call as necessary." (ECF No. 38-3 ¶ 17.)

## C. Champion's Medical Care From July 31, 2015 To The Present

A few days later, on July 31, 2015, at 8:40 a.m., Champion showed up in the medical department and stated he again was in pain. (ECF No. 1, at 11.) The nurse again gave Champion Tylenol. (Id.) When the pain persisted, at 10:00 a.m., Dr. Piscatelli ordered that Champion be sent to an outside hospital. (Id.) "Dr. Piscatelli noted his concern that . . . Champion's constipation might be due in part to a possible urinary tract infection and requested that . . . Champion be emergently admitted to an outside hospital to diagnose his condition." (ECF No. 38-3 ¶ 19.) At 6:36 p.m., Champion returned from the emergency room. (Id. ¶ 20.) The report from the hospital reflected that the CT scan of Champion's stomach was negative

9

for acute pathology. (Id.) Champion was provided with medication for his constipation. (ECF No. 38-4, at 33.)

Sometime thereafter, Champion was provisionally approved for stoma reversal surgery. (See ECF No. 38-4, at 35.) On February 23, 2016, Dr. Piscitelli was informed that the surgeon, Dr. Rayudu, wanted to conduct an onsite evaluation of Champion the following day. (ECF No. 38-3 ¶ 21.) On February 24, 2016, after evaluating Champion, Dr. Rayudu "recommended a CT scan of the abdomen and a colonoscopy with proctoscopy prior to the close-up of the stoma." (Id. ¶ 22.) On February 25, 2016, MLP Yirga conducted Champion's pre-operation counseling. (Id. ¶ 23.)

On February 29, 2016, Dr. Piscitelli ordered a CT scan of Champion's abdomen and pelvis. (Id. ¶ 24.) In his note, Dr. Piscitelli stated that Champion was scheduled to have stoma reversal surgery on March 7, 2016 and the CT scan needed to be completed before the surgery. (Id.) On March 2, 2016, Champion had the CT scan. (Id. ¶ 25.) "The CT scan was unremarkable for any ongoing issues or concerns." (Id.)

For reasons neither explained nor readily apparent, Champion did not undergo stoma reversal surgery on March 7, 2016 or at any time thereafter. (Id. ¶ 26.) FCC Petersburg has continued to treat Champion from March 7, 2016 to present. (Id. ¶ 27.) Dr. DiCocco asserts that he is "not aware of any complications . . . Champion has experienced concerning his

10

colostomy bag . . . . [or] of any risks associated with
. . . Champion's continued use of the colostomy bag while he
awaits surgery." (Id. ¶ 28.) According to Dr. DiCocco, "a
stoma reversal procedure to . . . Champion is not emergent and
is considered an elective procedure." (Id. ¶ 29.) That may be
Dr. DiCocco's, but the record does not show it was a reasonable
one.

On November 30, 2016, MLP Yirga retired from service with
the BOP. (ECF No. 46-1 ¶ 1.) MLP Yirga swears that he was not
responsible for the delay of Champion's stoma reversal surgery.
(Id. ¶ 6.)

## IV.  ANALYSIS OF CLAIM 1(A) – 1(D)

To survive a motion for summary judgment on an Eighth
Amendment claim, Champion must demonstrate that Defendants acted
with deliberate indifference to his serious medical needs. See
Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001). A medical
need is "serious" if it "has been diagnosed by a physician as
mandating treatment or one that is so obvious that even a lay
person would easily recognize the necessity for a doctor's
attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)
(quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir.
1999)).

The subjective prong of a deliberate indifference claim
requires the plaintiff to demonstrate that a particular
defendant actually knew of and disregarded a substantial risk of

serious harm to his person.  See Farmer v. Brennan, 511 U.S. 825, 837 (1994).  "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837.  Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough.  The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate."  Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (citing Farmer, 511 U.S. at 837).  Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm . . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"  Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (quoting Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, "society does not expect that prisoners will have unqualified access to health care" or to the

medical treatment of their choosing. <u>Hudson v. McMillian</u>, 503
U.S. 1, 9 (1992) (citing <u>Estelle</u>, 429 U.S. at 103-04). Absent
exceptional circumstances, an inmate's disagreement with medical
personnel with respect to a course of treatment is insufficient
to state a cognizable constitutional claim, much less to
demonstrate deliberate indifference. <u>See</u> <u>Wright v. Collins</u>, 766
F.2d 841, 849 (4th Cir. 1985) (citing <u>Gittlemacker v. Prasse</u>,
428 F.2d 1, 6 (3d Cir. 1970)). But nothing in the law supports
the refusal to extend a reasonable and usual medical procedure
that most people would have.

### A.  Champion's Use Of A Colostomy Bag Constitutes A Serious Medical Need

Courts have deemed a medical need to be serious, where "the
failure to treat a prisoner's condition could result in further
significant injury or the unnecessary and wanton infliction of
pain," or if the "medical condition . . . significantly affects
an individual's daily activities." <u>Hayes v. Snyder</u>, 546 F.3d
516, 522-23 (7th Cir. 2008) (citation omitted) (quotation marks
omitted). "A colostomy is when one end of an individual's large
intestine is brought through a surgically-created hole to the
outside of the abdomen and stitched down in order to allow the
individual's fecal matter to drain into a bag attached to the
individual's body." <u>Jones v. Gaetz</u>, No. 3:15-CV-25-NJR-DGW,
2017 WL 1132560, at *3 (S.D. Ill. Mar. 27, 2017) (citation
omitted). The use of a colostomy is a serious medical need as
there are obvious "risks inherent in a colostomy, including but

13

not limited to, irritation, infection, and herniation. Without a doubt, a colostomy requires a doctor's attention on occasion and significantly affects an individual's daily activities." Id. (citing Williams v. Erickson, 962 F. Supp. 2d 1038, 1042 (N.D. Ill. 2013)). Indeed, "even a lay person would easily recognize" alleviating an individual from the prolonged and medically unnecessary use of a colostomy would satisfy the Eighth Amendment's objective prong. Iko, 535 F.3d at 241 (quoting Henderson, 196 F.3d at 846). Defendants cannot avoid this result simply by categorizing stoma reversal surgery as elective. Johnson v. Bowers, 884 F.2d 1053, 1056 (8th Cir. 1989) (observing that "[t]he hospital's gratuitous classification of [the plaintiff's] surgery as 'elective,'" did not "abrogate the prison's duty, or power, to promptly provide necessary medical treatment" to him).

## B.  Deliberate Indifference

### 1.  Defendants DiCocco and Laybourn

As of April of 2015, Champion was approved for a stoma reversal. The record indicates that such a procedure was deemed medically appropriate and the stoma reversal surgery eventually was scheduled for March 7, 2016. Nevertheless, that surgery did not take place and over two years after the surgery was scheduled, and four years after Champion entered the BOP, Champion is still required to utilize a colostomy bag.

14

Defendants DiCocco and Laybourn do not suggest any medical reason existed for not performing the surgery.[6] Thus, this is not an instance where an inmate and a doctor or two medical professionals disagreed about the appropriate course of treatment. See Wright, 766 F.2d at 849 (citing Gittlemacker, 428 F.2d at 6). Rather, the record indicates that Defendants DiCocco and Laybourn were aware of Champion's condition and deemed a stoma reversal surgery to be the appropriate medical treatment. Nevertheless, these same individuals have stood flagrantly indifferent even though years have passed since the date scheduled for Champion's surgery and no surgery has been performed. See Jones, 2017 WL 1132560, at *4-5 (denying motion for summary judgment where the record failed to indicate doctor's denial of stoma reversal surgery was based on professional judgment); see Estelle, 429 U.S. at 104 n.10 (quoting Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974), for the proposition that a "doctor's choosing the 'easier and less efficacious treatment' of throwing away the prisoner's ear and stitching the stump may be attributable to 'deliberate indifference . . . rather than an exercise of professional judgment'"). Given this record, Defendants DiCocco's and

---

[6] Indeed, the record before the Court shows that the procedures and examinations preceding the surgery reflected that Champion was an appropriate candidate for stoma reversal.

Laybourn's request for summary judgment with respect to Claims 1(a) and 1(b) will be denied.[7]

## 2. Defendant Yirga

Champion fails to demonstrate that MLP Yirga acted with indifference to Champion's condition. Rather, the record reflects that before his retirement in November of 2016, MLP Yirga consistently sought to facilitate and obtain stoma reversal surgery for Champion. After his first meeting with Champion, MLP Yirga submitted a request that a surgeon be consulted to see if it was possible to reverse Champion's surgery so that Champion would no longer be required to use the colostomy bag. Thereafter, MLP Yirga requested the appropriate documents and procedures to facilitate stoma reversal surgery for Champion. The record does not indicate that MLP Yirga was involved in the cancellation of Champion's stoma reversal surgery or that Champion approached MLP Yirga about rescheduling the surgery. Accordingly, Claim 1(c) will be dismissed.

---

[7] DiCocco and Laybourn have asserted that they are entitled to qualified immunity, but do so in a most conclusory fashion. It is settled that those who seek qualified immunity "must do more than mention its existence and demand dismissal of the suit." Fisher v. Neale, No. 3:10CV486-HEH, 2010 WL 3603495, at *3 (E.D. Va. Sept. 8, 2010). And this is all that has been done here. The plea of qualified immunity is denied.

### 3.  Defendant Ramsey

EMT Ramsey had only a single interaction with Champion.  On July 29, 2015, at 5:45 p.m., Champion complained that he had been experiencing stomach pain for the past two hours.  EMT Ramsey provided Champion with Tylenol for his pain and encouraged him to return to the medical department if his discomfort continued.  Under these circumstances, Champion fails to demonstrate that EMT Ramsey "subjectively recognized that h[er] actions were 'inappropriate'" in light of any risk that Champion might have been experiencing from his stomach pain.  Parrish ex rel. Lee, 372 F.3d at 303 (quoting Rich, 129 F.3d at 340 n.2).  Because Champion fails to offer evidence that EMT Ramsey acted with deliberate indifference, Claim 1(d) will be dismissed.

### V.  ANALYSIS OF CLAIM 4

The Equal Protection Clause of the Fourteenth Amendment commands that similarly situated persons be treated alike.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)).  To survive summary judgment, Champion must demonstrate: (1) "that he has been treated differently from others with whom he is similarly situated"; and, (2) that the differing treatment resulted from intentional discrimination.  Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

17

In Claim 4, Champion contends that Defendants DiCocco, Laybourn, Ramsey, and Yirga violated his right to equal protection because they treated his request for stoma reversal surgery differently than they treated transgender inmates who requested hormone replacement therapy. Champion fails to demonstrate that he is similarly situated to transgender inmates who request hormone replacement therapy. Accordingly, Claim 4 will be dismissed.

## VI.  FEDERAL TORT CLAIM

The United States is immune from suit except to the extent it consents by statute to be sued. United States v. Dalm, 494 U.S. 596, 608 (1990) (citing United States v. Testan, 424 U.S. 392, 399 (1976)). The FTCA acts as a limited waiver of sovereign immunity, by permitting tort suits against the government. Williams v. United States, 50 F.3d 299, 305 (4th Cir. 1995). Under the FTCA, the government consents to "actions for damages against the United States for injuries caused by the tortious conduct of United States agents or employees acting within the scope of their employment to the extent that a private party would be liable under state law." Id. (citing 28 U.S.C. § 1346(b)). Nevertheless, courts must "scrupulously observe[]" the requirements for securing the government's waiver. Kokotis v. U.S. Postal Serv., 223 F.3d 275, 278 (4th Cir. 2000) (citing United States v. Kubrick, 444 U.S. 111, 117-

18 (1979)). Hence, a plaintiff must file his or her FTCA action "in careful compliance with its terms." Id. (citation omitted).

Under the FTCA, a federal court will not have jurisdiction over a tort suit against the United States "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . ." 28 U.S.C. § 2675(a). According to the pertinent regulation for FTCA claims, an administrative claim is deemed presented, "when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 . . . ." 28 C.F.R. § 14.2(a). Additionally, the following statute of limitations governs claims under the FTCA:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). As explained below, Champion failed to file his FTCA claim within six months after the BOP denied his claim.

On November 19, 2015, Champion filed his Standard Form 95 with the BOP Mid-Atlantic Regional Office. (ECF No. 38-2, at 19.) In that administrative claim, Champion complained about the failure of BOP medical staff to perform the stoma reversal surgery. (Id.) On December 11, 2015, the BOP denied Champion's

19

administrative claim and sent Champion a letter reflecting that denial. (ECF No. 38-2, at 22.) Under 28 U.S.C. § 2401(b), Champion had until Monday, June 13, 2016 to file his FTCA claim. Champion, however, failed to file his FTCA claim with the Court until, at the earliest, July 6, 2016. See Houston v. Lack, 487 U.S. 266, 276 (1988).

Under Houston v. Lack, Champion's Complaint is deemed filed as of the date he hands it to prison officials for mailing to this Court. Champion's Complaint was signed on July 4, 2016. (ECF No. 1, at 5.) However, Champion's request to proceed in forma pauperis, which was submitted contemporaneously with the Complaint, indicates Champion did not hand his Complaint to prison officials for mailing until at least July 6, 2016. (ECF No. 2, at 3.) However, Champion appears to have a meritorious claim and he has been diligent in pursuing his claim in the face of bureaucratic obstinance. Moreover, the issue of tolling has not been addressed. And, the Court is appointing counsel for Champion. The motions raising the statute of limitations will be denied without prejudice so that tolling can be briefed.

The United States also has moved for the dismissal of Claim 3 on the ground that Champion failed to obtain expert certification concerning the merits of the case prior to serving process on the defendants. Virginia law applies in this case because, for an FTCA claim, liability may only be found "in accordance with the law of the place where the act or omission

20

occurred." 28 U.S.C. § 1346(b)(1). The Virginia Medical Malpractice Act ("VMMA") requires a plaintiff alleging medical malpractice to obtain an expert certificate of merit before serving process on a defendant unless the claim does not require expert testimony because the subject matter is within the common knowledge and experience of the jury. Va. Code § 8.01-20.1. As the Court is appointing counsel for Champion, the MOTION TO DISMISS Claim 3 on the ground that Champion failed to comply with the VMAA will be denied without prejudice so that the issue of whether Champion's circumstances fall within exception to the certificate of merit requirement can be briefed.

## VII. CONCLUSION

The MOTION TO DISMISS filed by Defendants DiCocco, Laybourn, Ramsey, and the United States (ECF No. 37) will be granted in part and denied in part. DEFENDANT YIRGA'S MOTION TO DISMISS OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT (ECF No. 45) will be granted in part and denied in part. Claims 1(c), 1(d), and 4 will be dismissed. Isaac A. McBeth of the Halperin Law Center will be appointed to represent Champion. If appropriate, within eleven (11) days of the date of entry hereof, the United States shall file a motion for substitution with respect to Claim 2. The action will be referred to the Honorable David J. Novak, United States Magistrate Judge, for settlement. Counsel shall abide by whatever further

21

instructions or requirements may be imposed by Magistrate Judge Novak.

The Clerk is directed to send a copy of the Memorandum Opinion to Champion and counsel of record.

It is so ORDERED.

                                        /s/    REP
                        _____

                        Robert E. Payne
                        Senior United States District Judge

Richmond, Virginia
Date: August 2__, 2018